**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
DANIEL STRYKER,                     :
                                    :   Civil Action No. 07-4923 (FLW)
            Plaintiff,              :
                                    :
     v.                             :       **O P I N I O N**
                                    :
GRANAHAN, et al.,                   :
                                    :
            Defendants.             :
_____:


**APPEARANCES:**

Daniel Stryker, Pro Se
Southern State Correctional Facility
#568818
P.O. Box 150
Delmont, NJ 08314

**WOLFSON, District Judge**

   Plaintiff, Daniel Stryker, currently incarcerated at the Southern State Correctional Facility, Delmont, New Jersey, seeks to bring this action alleging violations of his constitutional rights in forma pauperis, without prepayment of fees pursuant to 28 U.S.C. § 1915.  Based on Plaintiff's affidavit of indigence and prison account statement, the Court will grant his application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the following reasons, Plaintiff's claims against defendants Granahan, Tozzi, and Sidorski will be permitted to proceed.  All other defendants will be dismissed, without prejudice.

## BACKGROUND

Plaintiff states that on July 27, 2006, he was transported to the Manville Municipal Court.  While in the "holding tank," Plaintiff looked through a door window into a courtroom. Defendant Officer Granahan, of the Manville Police Department, saw Plaintiff looking and ran to the door and "violently pushed the door into me."  He then asked him why he was looking into the courtroom, then he "slammed" Plaintiff into a wall and started poking him in the chest screaming at him.  Defendant Officers Tozzi and Sidorski of the Somerset County Sheriff's Department, witnessed the alleged assault.

Plaintiff soon realized that he could hardly move and that pain in his arm was "excruciating."  He asked for medical attention on three occasions.  Officer Granahan told him in not-so-polite terms to be quiet.

Although not clearly set forth in the complaint, it appears that Plaintiff was transported back to the Somerset County Jail by defendant Officers Tozzi and Sidorski.  These officers debated whether they should take Plaintiff to the hospital.

A nurse at the jail, defendant Quinn, asked Plaintiff what was wrong, and Plaintiff stated that he felt like his elbow was broken.  Defendant Quinn told him that if they sent him to the hospital and nothing was wrong, charges would be pressed against him.

Defendants Tozzi and Sidorski brought him to the hospital and he was immediately taken for x-rays, which demonstrated that his elbow was broken.  Plaintiff returned to the jail with a sling on his arm and told the Nurse that the elbow was broken.  Plaintiff generally states that he was denied further treatment.

Plaintiff seeks monetary and other relief against defendants Granahan, Quinn, Tozzi, and Sidorski.  He also seeks relief against the warden of the Somerset County Jail, O'Neill, because O'Neill did "nothing to remedy" the situation after Plaintiff filed 18 grievances.

## DISCUSSION

**A.    Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321

(April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

When determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Denton v. Hernandez, 504 U.S. 25, 34 (1992);

4

Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002)(dismissal pursuant to § 1915(e)(2)).

**B.     42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Liberally construing the instant complaint, Plaintiff alleges a claim of excessive force by Officer Granahan; failure to intervene claims against Officers Tozzi and Sidorski; and a failure to provide

medical treatment claim because he was not permitted a follow up on the treatment of his arm and back injuries.

C.  **Excessive Force and Failure to Intervene Claims**

Plaintiff seeks to sue defendant Granahan for use of excessive force against him, causing his arm to break and other injuries.

To state a claim under the Eighth Amendment, an inmate must allege both a subjective and an objective component. See Wilson v. Seiter, 501 U.S. 294 (1991).[1]  The subjective component requires that the state actor possess a particular state of mind because only the "unnecessary and wanton infliction of pain" implicates the Eighth Amendment. Id. at 297; see also Estelle v. Gamble, 429 U.S. 97 (1976).  The test used in determining whether the state actor possessed the requisite state of mind is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citation omitted).  The objective component requires that "the deprivation [be] sufficiently serious." Wilson, 501 U.S. at 298.

---

[1] It is unclear from the Complaint whether Plaintiff was a pretrial detainee at the time of the incident (Fourteenth Amendment applies) or whether he was a convicted prisoner (Eighth Amendment applies).  The Eighth Amendment standard, however, is more difficult to establish.  The Court finds that even under the Eighth Amendment standard, Plaintiff's claims are not subject to sua sponte dismissal.

Thus, to set forth a valid claim for the use of excessive force under the Eighth Amendment, a plaintiff must demonstrate that "officials applied force maliciously and sadistically for the very purpose of causing harm, or . . . that officials used force with a knowing willingness that [harm] occur." Farmer v. Brennan, 511 U.S. 825, 835-36 (1994) (internal quotation marks and citations omitted).

At this initial stage in litigation, the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist. , 132 F.3d 902, 906 (3d Cir. 1997). Based on the facts alleged by Plaintiff, this claim will proceed against Officer Granahan.

Plaintiff further states that defendant Officers Sidorski and Tozzi "stood and watched" defendant Granahan assault him. A police officer may be liable under section 1983 if the officer fails to intervene and take reasonable steps when an individual is subjected to excessive force at the hands of another officer, even if that officer is a superior. See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)(citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986)(other citations omitted)). However, the officer must have a "realistic and reasonable opportunity to intervene." Id. at 651 (citing Clark, 783 F.2d at 1007

(instructing the district court upon remand to determine whether the officer was in a position to intervene); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972)(liability for failure to intervene exists only if the beating occurred in the officer's presence or was otherwise within his knowledge); Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981)(liability exists only if the non-intervening officer saw the beating or had time to reach the offending officer)).

Taking Plaintiff's allegations as true, the Court will also allow the failure to intervene claims to proceed against defendants Tozzi and Sidorski.  See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

**D.    Medical Care Claims**

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege a serious medical need and behavior on the part of prison

officials that constitutes deliberate indifference to that need. See id. at 106.[2]

To satisfy the first prong of the Estelle inquiry, the inmate must allege facts indicating that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent

---

[2] Again, the Court notes that it is unclear whether or not Plaintiff was a pretrial detainee at the time of this incident, or convicted. However, even under a pretrial detainee standard of whether or not the denial of medical care constitutes "punishment," see Bell v. Wolfish, 441 U.S. 520 (1979), Plaintiff has failed to allege facts indicating that his claim should proceed. As stated within the Opinion, Plaintiff will be permitted to file a motion to amend the complaint, addressing these deficiencies.

9

to reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  See Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).

In the instant case, it seems clear that Plaintiff's injuries amount to a "serious" medical need.  Nonetheless, Plaintiff has not alleged facts indicating that the defendant Quinn, or any other defendant, was deliberately indifferent to his needs.  Plaintiff states that his broken elbow was treated. The extent of his medical care claim is a statement that he was "refused medical treatment on numerous occasions, and would not follow up on the treatment of my arm and back injuries."

Because Plaintiff has failed to establish an Eighth Amendment violation, these claims will be dismissed for failure

to state a claim upon which relief may be granted. However, the dismissal will be without prejudice to Plaintiff filing a motion to file an amended complaint in order to correct the deficiencies of this claim, in accordance with the attached Order.

**E.     Claims Against Warden**

Finally, Plaintiff names as a defendant the Warden of the Somerset County Jail, O'Neil, stating that: "Warden O'Neil did nothing to remedy any of the eighteen (18) grievances that I filed for the aftermath of these incidents."

It is settled law that supervisory prison personnel may be held liable under § 1983 only if their own actions caused the constitutional deprivation. See Keenan v. City of Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992). A supervisor may be held liable for the actions of subordinates only if the plaintiff can show that the supervisor:  (1) participated in violating the plaintiff's rights; (2) directed others to violate them; (3) as the person in charge, had knowledge of and acquiesced in his or her subordinates' violations; or (4) tolerated past or ongoing misbehavior. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Friedland v. Fauver, 6 F. Supp.2d 292, 302-03 (D.N.J. 1998).

From the facts alleged in the complaint, Plaintiff's claims against defendant O'Neil must be based on an impermissible theory of respondeat superior or vicarious liability. See Polk County

11

v. Dodson, 454 U.S. 312, 324 (1981) (stating that a § 1983 claim cannot be based on respondeat superior liability); Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978) (holding that supervisory personnel are liable under § 1983 only if they have some personal role in causing the alleged harms or were responsible for some custom or practice which resulted in the violations). Thus, the claims against this defendant must be dismissed, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Plaintiff should note that "a defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Thus, Plaintiff may submit a motion to file an amended complaint, alleging facts indicating that the Warden should be held accountable under a supervisor liability theory.

**CONCLUSION**

Based on the foregoing, Plaintiff's excessive force claim and failure to intervene claims against defendants Granahan, Tozzi, and Sidorski will proceed.  However, all other claims and defendants will be dismissed, without prejudice.  Plaintiff will be permitted to submit a motion to file an amended complaint to correct the deficiencies of his dismissed claims.[3]

An appropriate Order accompanies this Opinion.


          s/Freda L. Wolfson
          FREDA L. WOLFSON
          United States District Judge

Dated: December 4, 2007

---

[3] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  See id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  See id.